May it please the Court. I'm Douglas Ross, and I represent Vision Service Plan. I'd like to reserve two minutes for rebuttal. I plan to address two issues this morning. The first is the membership issue. The second is the assertion made by the government and adopted by the District Court that Vision Service Plan does business in a manner similar to for-profit companies. I'm aware I've got ten minutes, and if there are other issues the proceed as indicated. Turning to the first issue, the government says VSP doesn't qualify for an exemption because it doesn't benefit the community, and the reason that it doesn't do so, a categorical reason in the government's mind, is that it doesn't provide benefits to people other than members. What's the standard of review that we should employ over the 501 c. determination by the service? This case comes up on cross motions for summary judgment, Your Honor. But what standard should we apply in looking at the service's determination that you're not entitled to exemption? None. That was the service's administrative determination. It gets no deference. We then sue the service. I didn't ask about it. Is the standard, our it reasonable? Is it some form of Chevron deference? What is it? De novo. And with respect to the membership issue, Your Honor, the argument obscures what VSP does. We've laid out in the briefs that, yes, VSP provides benefits to employees of large companies, but it provides benefits to employees of small companies as well. It provides benefits to 2 million people who are indigent and eligible for Medicaid. It provides benefits to the aged, blind and disabled through the Medicare program. Before you get past it, why is the answer de novo? This is a case, Your Honor, where the VSP had been exempt for 40 years. The service then determined that VSP simply didn't qualify for exemption. So why is this an application of the agency's expertise to which is entitled to a specific fact pattern applying a statute within its area of enforcement? Why doesn't it get deference? I'm aware of no law that suggests that it does, looking at the C-3 cases involving health plans, looking at the C-4 cases, the Monterey case out of this circuit. There's simply a determination by the IRS that you don't qualify. And at that point, it's the burden is on the applicant, VSP, to show that it does by preponderance of the evidence. Are those tax cases 580 or the IRS V constitutes income? I'm sorry. I didn't hear the question. I forget what the section of the IRS is where the IRS can actually realign income. 580 is it? I forget what the section is. I don't know the section, Your Honor. But normally on stuff like that, the agency gets a good bit of deference. If there were some – if there were an IRS determination through some administrative process that was entitled to deference, I suspect the IRS would have brought that to the Court's attention. Okay. Go ahead. The IRS argues – In the Monterey parking – Monterey public parking, didn't we go into – didn't we approve the district court's quantitative comparison of the organization's public vis-a-vis its private benefits? And is that what the district court did in this case? The district court in this case looked at that along with a lot of other factors. But what it really focused on was this membership issue. And yes, Your Honor, the ultimate question is whether or not Vision Service Plan is providing a public benefit commensurate with the C-4 exemption that it seeks here. That is absolutely correct. Where the district court got it wrong was it got hung up on this idea that because you provide benefits to people you call members, quote, unquote, you're not providing a public benefit. It is Vision Service Plan's position that the members to whom it's providing benefits are every segment of the California society. Furthermore, to the extent that the government says – to offer its service to anyone in the public, you have to be a member before you get your service. Yes. And there's two reasons for that that are structural and beyond VSP's control. The first is the way in which American health care is delivered. It is primarily delivered through groups. Because of tax deductibility of the health care benefit, most people get their coverage through an employment group. Other people get it through the Medicare group or through Medicaid or through Healthy Families. So that structural reason, VSP responds to it by providing health care to individuals at the place where they get their health care, through a group. The second reason is unique to Vision Care. If you are well and you are worried that you might become ill, you will buy health care coverage. That is different from the Vision World. Adverse selection is a real problem in the Vision World. If you know you don't need eyeglasses, you're unlikely to get Vision Care this coming year. If, like me and at least two of you, you know that you do need eyeglasses, then you'll opt for that benefit. And on an individual basis, if there were an individual benefit, and this does get to the nub of the government and the district court's argument, VSP would suffer adverse selection. It responds to the real world. People get their care through groups, adverse selection, and it offers care to groups rather than individuals. But those groups reach every segment of the California society. And how is that different than the other business that provides service to groups? Microsoft does a pretty good job of helping people. They provide this operating system that can be used for all sorts of swell things. There are fundamental differences. Tell me what they are. VSP is not for profit. What that then means is it doesn't have shareholders. It doesn't have to aim for the kind of margin that for-profit companies do. It still manages to amass quite a bit of surplus. It has, which is still well under six months of operating expenses after 48 years of amassing a surplus. But its surplus is less than six months of operating expenses. It is a large company. The members of its board are in the industry, aren't they? Eleven of the 15 are. Three are optometrists in this state. Eight are optometrists from other states. Those that are in the business are in it for profit. Yes, they are. Much like tax-exempt HMOs that contract with individual physicians. The physicians are for profit. The HMO is not. The same happens on that health plan side all the time. The IRS and the courts have recognized that an HMO may contract with individual doctors who are for profit, but the HMO is not. Does the plan refer its members to anyone not represented by a for-profit person on the board? When you say refer its members, you mean for coverage? For coverage, for the provision of services. It has 3,900 doctors in California, if that's what Your Honor is asking. And so people go to those 3,900 doctors on the VSP network to get services. The board consists of three California doctors, eight doctors from elsewhere, and four public members. Coming back to the standard, the circuit courts have applied an arbitrary and capricious standard to similar service determinations, haven't they? Looking at the Geisinger case, at the Intermountain Healthcare case, I didn't see that, Your Honor, no. And those were very similar determinations in those cases. That's exactly what we're looking for. The second circuit in the Dietz Corporation case involving the purpose of locating a corporation outside, offshore, the tax penalties in the Toberman case in the Eighth Circuit. If tax penalties had been applied, then I think that abuse of discretion would, in fact, be the situation. Here it's simply a question of can we prove we qualify for an exemption, and I respectfully submit again, Your Honor, I'm not aware of a deference or any other standard other than de novo with respect to those determinations. You never appeared before any administrative agency. I mean, you didn't have an opportunity to litigate this before anyone. There was no litigation. There were informal meetings. Yeah, but there's no record of anything that you were able to. Well, let me ask you, why is your situation any different than in contracting plumbers? Where it's very similar, they provide an economic benefit to just their members. And you seem to be very similar in your situation. I think that question hits on exactly what I want to get to. Contracting plumbers or American woodman buyers or the other cases cited by the government involve a small group of people who get together in effect as a mutual aid society to help themselves. That does not describe VSP. VSP is founded originally many years ago by optometrists, but what they have done ever since is benefit the members, and the members that are the word member here means the public, the people who get the benefit, not the founders. So this is not a small little group or a tight little group. Well, should the size make any difference? You're still catering to your members. We are not catering to the founders of the organization. We are catering to the people who get benefits, and we call them members, much as the YMCA caters to members, people who sign up to get Y benefits. I'd come back to the question Judge Kaczynski asked a few minutes ago, to which I want to complete my answer, to how we differ from for-profit vision companies. The lower court looked at similarities between VSP and for-profits that simply are the kinds of similarities you would expect to see in any well-run organization, such as whether we cut costs. What they should have done is look at us versus a for-profit company. Because we are non-profit, we aim for a smaller margin. Because we aim for a smaller margin, we're not going to cut costs. And the result of this is that VSP provides care to these 2 million Medicaid people. She says greater margins? Does she give a number? She doesn't give a number for the for-profits, and there is no other evidence in the record on this. Pretty thin. But I think it's up to the government to indicate in which ways we resemble them. A 2 to 4 percent profit means that we can provide health care to these segments, and there, there is evidence. I have no idea whether 2 to 4 percent is a big profit or a little profit. Supermarkets operate on less than that. In terms of their, well, that's right, they have much higher turnover. In terms of what that lower margin means, though, and that's what's significant, not the margin itself, it means we serve segments of the population the for-profits do not serve, and there is evidence in the record of that. The government didn't bring in any evidence as to what for-profits do. We have evidence from Patricia Cochran, from Rob Lynch, from others, that the for-profits stay away from the segments that we serve. They don't serve the Medicaid people, the healthy families, and not as many Medicare people. Okay. You're out of time. Thank you. We'll hear from the government. Morning. May it please the Court? I'm John Dudek. I represent the government. You're from the tax division? Yes, Your Honor. Thank you very much. Could you straighten us out on the standard of review here we have? You didn't go through any administrative proceeding when you withdrew their ticket for tax exemption. Why don't we have, why isn't there de novo review? Because it's a summary judgment. It's cross motions for summary judgment. But even, we appreciate that, but even looking at the motions for summary judgment, don't we have to find that there's no deference whatsoever to what the IRS did? I would approach it from a different angle. The taxpayer has a burden of proof in a tax refund, and this concerns a tax exemption. So it's a much more difficult situation that the tax exemptions are strictly construed, so the burden is on VSP to show that they're entitled to be exempt from taxes. Does your determination that they're not entitled to any, if it's a 50-50 case, in other words, does your determination, the IRS's determination, mean anything to us? We haven't argued that as a position in our brief, but they did have an extensive administrating proceeding before the IRS, and they were issued a technical advice memorandum revoking their exemption. And the government's position in this case is basically paralleling what the government's position was administratively, basically that they don't meet the social welfare test. Okay. Your position is that they have a burden preponderance of the evidence that they were entitled to this exemption, and the facts of the case before the district court showed that they did not meet that burden? That's correct, Your Honor. Because it's an exemption, they have a more difficult burden than the ordinary case. Well, they have a preponderance of the evidence. That's 51 percent of the question, isn't it? Well, they have to demonstrate that they fall within the statutory scheme. Yeah. This is the we're back to the social welfare test. HMOs normally are exempt, right? It depends on the facts and circumstances, Your Honor. When it comes to the C-4, the social welfare exemption, you would have to, an HMO would have to demonstrate that they're primarily promoting social welfare. Well, I guess, you know, let's see what I know about HMOs. You can't usually join an HMO just coming off the street. Some you can, but many HMOs contract with organizations. You can only contract, just to give you an example, when I worked for the government in Washington, D.C. You work in Washington, right? Correct. I was in the GW HMO, GW Hospital, right? And as I recall, you had to be either a member in the government, or I don't know whether they took on employees of other large employees, but you couldn't just, you know, because I had lived in D.C. before that, before I joined the government, you couldn't just go and become a member of the GW HMO. How, if that's typical, I think it is typical of HMOs, I don't think you join Kaiser just without being part of an organization. How is that different from... Again, I don't think it's clear that these organizations are exempt under C-4. That in order to get the exemption under C-4, you have to, or if they are exempt under C-4, they would have had to have made the social welfare showing. The VSP seems to be arguing, because they provide medical services that this, or health care, that this automatically makes them entitled to an exemption. Well, that's not the case. It's not what you do. Are you saying that so long as your services are not open to the public at large, you can't get the exemption? No, Your Honor. It's a multi-factor test, and that was one of the key factors, the contracting plumbers case. That was one of the key factors that influenced the district court. Help me out here. When will I know if the district court made a mistake? You're not giving me much help here. You say, well, every fact situation is different, they flunked this test. But how do I, since we're here to review what the district court did, how will we know when district court goes way wrong and we say we have to reverse? How do we identify that case? I mean, we can go down a list of factors, like community board has been mentioned. Well, let's just limit ourselves for the time being to this one factor having to do with public... Social welfare. In other words, but it all adds up, the community board is a factor, the open membership is a factor. I'm sorry, the community board? You mean like the members from the community? In other words, in this case, some of these social welfare organizations, it's a community board that dominates. Here with VSP, we have optometrists and related people on the board. I think there were four outside members. Again, on the open membership, the only way you could get benefits in VSP is to be involved with someone who is contracted with VSP. If we find they're not involved in social welfare, do we have to reach the issue of whether the business is conducted in a manner operated for non-for-profit? I'm sorry, Your Honor, what's your question? If we find they're not involved in social welfare, do we need to reach the issue of whether it carries on its business in a manner similar to organizations operated for profit? I think you do not have to reach that. It's a two-pronged test, so if they flunk the social welfare, then you would not have to go to the for-profit test. Why do they flunk the social welfare? Well, just going back down the list, no community board, no open membership, the charity care is de minimis. If you look at their activities with Medicaid and Medicare and healthy families, they signed contracts. They signed contracts. They were like subcontractors to HMOs. So VSP in that situation, they're not expanding vision services. Whoever had that original contract might be doing it, but VSP isn't doing it. The district court here assumed arguendo that the Medicaid and the Medicare promoted social welfare. I mean, initially it said you don't have enough of it, but even assuming arguendo that it promotes social welfare, it wasn't doing it. Well, what's the difference between like if you belong to a Blue Cross Blue Shield plan and you get medical care, you have to pay a fee, otherwise they kick you out of the plan, and you've got to be a member, and it's not open, yet they're tax exempt. Well, I think their tax exemption is in a different provision of the code that's not at issue here. I don't think it's a social welfare. No, they don't kind of be social welfare, but these things, they are related. Just as you say, C3 and C4 are related. Anyone looking for an exemption from tax, you've got to prove it's not a business and so forth. You're not making money on this. And what's the difference between that where, you know, you've got to pay a fee to join some of these health organizations. It's not open to the public. It's operated similar to a business operated for profit. They're not looking to throw money away. They skip everywhere they can. So what's the difference between that? This outfit just gives you a good deal on glasses if you join them. Well, one thing I can say is health care is not a test in the statute we're dealing with. It's social welfare. So that has to be the focus that has to add up to benefiting the community as a whole. And when you benefit your membership, I mean, the district court found that VSP primarily benefited its paying private members. So that's not benefiting society as a whole. That's the rub, that's the problem. I mean, they haven't, they have to demonstrate that they're primarily engaged in promoting social welfare. They haven't met that test. It's commendable what they do. Their charity programs are commendable. But when the district court went through the record and analyzed each one of its components, its conclusion was it doesn't add up. It doesn't add up to promote. I'm sorry, Your Honor. The same could apply to a hospital. Well, hospitals would usually be under C3, for example, as a charity. In other words, the medical care would come in the context of, like, having an emergency room that would be open to members of the public who were born there. I don't know about you, but whenever I've gone to an emergency room, I pay through the nose. Okay. There was no charity involved. I mean, other than the obvious care of the doctor, the personal charity involved in giving good medical care, but there was, you know, when the time came, we were expected to pay. And, you know, my insurance would cover some of it, but I've never been to a hospital that sort of offers free services. Sound Health, a tax court case, has a lengthy discussion of the hospital context. I'm having trouble understanding how this is different from a hospital. Because the hospital, if you're going under C3, you're talking about charity. If you're going under C4, 501C4, you're talking about promoting social welfare, benefit to society as a whole. So they're two different tests, they're two different standards. Well, under C4, you have to benefit all of society. Can't you just benefit the chunk of society that joins your organization? You don't want to pay $300, $400 for glasses. It's good if those people that join only have to pay $150 for glasses. We're back to contracting plumbers and Lake Forest and the Women's Buyers Club. They were just benefiting their small group. In fact, VSP says in their reply brief, they don't admit individual, they don't have individual members, because their utilization would be too high and the premiums would be too high. So, I mean, that's a choice they've made. They are, from some of the internal memos, they're in competition with Walmart, basically. They fear competition from Walmart. They're running, in a sense, they're running an ordinary commercial operation that is focused on providing vision care. That's not, that kind of situation, you shouldn't be entitled to a tax exemption if you're in direct contact with Walmart. They're in competition with businesses that are paying. There are no shareholders here that get profits, right? I mean, that's the one fundamental way in which this differs from a business, in that if they do make a profit, it does not go into anybody's pocket. Well, that's correct. There are no shareholders, but the social welfare statute does refer to private shareholders, and I might point out that the executives here got very large bonuses, were paid very large salaries. The top executives were only working 13 hours a week. They were only working part-time, and they had. So the Red Cross, I just read the Red Cross, the president of the Red Cross, I'd take that job tomorrow. And that's a bit of charity for, you know, charitable organization. So you can't. I guess the point here is, though, if your focus is on social welfare, there doesn't seem to be anything in the record that points to what VSP is doing from the standpoint of promoting social welfare. For example, someplace in the record it says that VSP cut down during 2003 on the number of people who were enrolled in Medicare. Now, that's not putting your focus on promoting social welfare. It's putting the focus on profit. Thank you. Thank you very much, Your Honor. The other time, if you'd like to take a minute for rebuttal, you may have it. Thank you, Your Honor. The C-3 standard is relevant to the C-4 case. The IRS itself has made clear that there is a less exacting standard for social welfare under C-3, under C-4, excuse me, than there is under C-3. Under C-3, the cases say that health care is an exempt purpose. The cases and the regulations make clear that social welfare can be the promotion of health as well. So we would argue that the standard is health is an exempt purpose. Now the question is, are we primarily benefiting the community by providing this vision care to the community? And that is one reason that the contracting plumbers and other cases are not pertinent here, because we are pursuing a social welfare purpose. The question is, are we doing it as the primary purpose of the organization? Many HMOs are tax-exempt. Downstairs you can see that you can sign up today as a federal employee for the Kaiser HMO, which is a C-3 exempt organization, or Aetna, which is not tax-exempt. The courts have recognized, the IRS has recognized in their internal revenue manual, they recognize that HMOs can be tax-exempt and provide a great benefit to society as a result. And I guess that's where I would like to end. Many of the specific things that Mr. Dudek brought up are addressed in our reply brief. This idea that we have private shareholders and that those are our executives is simply untrue. You will see that our executives are paid according to what you need to pay in order to get them to come in and run a complex industry, a complex company in a complex industry. The IRS has made it clear in its intermediate sanction regulations under Section 4958 that that's okay to pay executives market rates, and yet in our case they say, no, it's not. Why does any of this matter? For-profit organizations and not-for-profit organizations both can at the end of the day provide you with health care or vision care, but they do it in different ways. The amicus brief in this case submitted a study that shows that non-profit health plans can provide higher quality health care than for-profit plans. It is important that people retain that choice, that they can say, I'm going with the non-profit vision plan, which has a small margin, which provides Medicaid coverage beyond any provided by the for-profit plans, which in fact loses money on its Medicaid and Medicare coverage, though the government disagrees, but if that's a factual issue, that should go back to the court, which provides coverage through a network of independent doctors and refuses to do business through chains, which is how the for-profits do it, which wants you to use your benefit, which is not what an insurance company usually wants you to do. This is a company that operates very differently, and it's critically important that non-profits retain a place in health care. They can only do that, Your Honor, if they retain their tax exemption. Thank you.
judges: Kozinski, Hawkins, Cowen